1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10
11

| | |
|---|---|
| JAEL WILLIAMS | Case No. 14-CV-07906-R-AGR |
| Plaintiff, | [Assigned for all purposes to The Honorable Manuel L. Real] |
| vs. | |
| ODLE MANAGEMENT GROUP LLC, LONG BEACH JOB CORPS d/b/a LONG BEACH JOB CORPS CENTER, and DOES 1 TO 100, inclusive | **UNCONTROVERTED FINDINGS OF FACTS AND CONTENTIONS OF LAW** |
| Defendant. | Hearing Date: June 15, 2015<br>Time:         10:00 a.m.<br>Courtroom:   8 |
| | Trial Date:      July 21, 2015 |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Motion for Summary Judgment, or, alternatively, Partial Summary Judgment of defendant Odle Management Group LLC ("Odle") came regularly for hearing on June 15, 2015 at 10:00 a.m. in Courtroom 8 of the above-entitled Court, located at 312 N. Spring Street, Room 8 – 2nd Floor, Los Angeles, California, 90012, the Honorable Manuel L. Real presiding.

Pursuant to Central District of California Local Rule 56-1, the following is Defendant Odle Management Group LLC's ("Defendant" or "Odle") Uncontroverted Facts and Conclusions of Law in support of its Motion for Summary Judgment or, in the Alternative, Motion for Partial Summary Judgment ("Motion").

After full consideration of the evidence, the memoranda of points and authorities submitted by counsel and supporting documents, and the oral argument, the Court determines that the following facts and contentions of law have been established as follows:

## UNCONTROVERTED FACTS

**ISSUE NO. 1:**  Judgment shall be entered in Odle's favor as to Plaintiff Jael Williams' ("Plaintiff") first claim for relief for disability discrimination in violation of the Fair Employment and Housing Act ("FEHA"), because the undisputed evidence establishes that Odle had a legitimate, non-discriminatory, business reason for terminating Plaintiff's employment, and Plaintiff failed to establish that Defendant's stated reasons are a pretext to mask unlawful disability discrimination.

|   | Defendant's Uncontroverted Material Facts | Defendant's Supporting Evidence |
|---|---|---|
| 1. | Odle provides no-cost education and career technical training to low-income students between 16 and 24 years of age.  It operates as the Long Beach Job Corps, part of the Job Corps program administered by the U.S. Department of Labor. | Declaration of Lisa Odle, filed concurrently with the Motion ("Odle Decl."), ¶ 2. |
| 2. | Its inclusion in the federally-funded program results in significant government oversight.  This oversight includes audits and reporting | Odle Decl., ¶ 2. |

**UNCONTROVERTED FINDINGS OF FACTS**
**AND CONTENTIONS OF LAW**

| | | Defendant's Uncontroverted Material Facts | Defendant's Supporting Evidence |
|---|---|---|---|
| | | obligations for its operations. | |
| | 3. | Long Beach Job Corps' campus consists of instructional space, for both classroom and technical learning.  The campus also includes dorm-style housing for its students, as well as an administration building. | Declaration of Carl Adams, filed concurrently with the Motion ("Adams Decl."), ¶ 4. |
| | 4. | Plaintiff was hired by Odle on November 5, 2012 as a clerk in the Center Standards & Initiatives department ("CSI Clerk"). | Declaration of Guillermo A. Escobedo, filed concurrently with the Motion, Exhibit 17 ("Pl. Depo."), 56:20-22, 58:1-16. |
| | 5. | Plaintiff was paid $12 per hour, and was always an at-will employee. | Ex. 17, Pl. Depo. at 63:6-11. |
| | 6. | Upon being hired, Plaintiff received a "Standards of Conduct" package, which includes guidelines as to what is "deemed acceptable or unacceptable conduct by any…employee," such as tardiness, absenteeism, breach of data integrity and insubordination. | Declaration of Dawn White, filed concurrently with the Motion ("White Decl."), ¶ 6, Ex. 2, "Standards of Conduct"; Ex. 17, Pl. Depo., 74:24-77:14. |
| | 7. | Plaintiff also received the Policies In Brief, which included policies concerning vacation, sick leave, and personal appearance. | Ex. 17, Pl. Depo. at 77:18-78:11. |
| | 8. | Odle also has in effect an Affirmative Action/Equal Employment Opportunity policy, which, in part, prohibits discrimination against its disabled employees.  Odle further has a policy requiring it to provide reasonable accommodation to its employees, which is posted in its facility. | White Decl., ¶ 6, Ex. 6, "Affirmative Action/Equal Employment Opportunity Policy." |
| | 9. | As a CSI Clerk, Plaintiff was responsible for various clerical duties and for assisting her supervisor, CSI Manager Carl Adams, in enforcing behavior management systems. | White Decl., ¶ 5, Ex. 1, CSI Clerk Job Description; Ex. 17, Pl. Depo., 292:24-293:12. |

2

| | Defendant's Uncontroverted Material Facts | Defendant's Supporting Evidence |
|---|---|---|
| 10. | As Plaintiff admits, the position was "*very demanding and very hands-on*," and required a level of "*trust*" with the students. | Ex. 17, Pl. Depo. 58:17-21, 60:17-24. |
| 11. | The position required Plaintiff to handle 40-50 Incident Reports (i.e., disciplinary reports) per week. | Ex. 17, Pl. Depo., 114:17-20. |
| 12. | Plaintiff only had a short timeframe – between two to seven days per Incident Report– in which to interview the disciplined student, coordinate with a fact-finding board, and process the paperwork. | Ex. 17, Pl. Depo. at 116:1-117:25. |
| 13. | If these deadlines were not timely met, Odle could encounter issues with its governmental audit and could lose funding. | Adams Decl., ¶ 5. |
| 14. | Plaintiff also served as the Student Government Advisor ("SGA"), in which she was responsible with meeting with the student government board twice a month, overseeing the student store and its funds, and assisting in organizing student events. | Ex. 17, Pl. Depo., 93:11-94:11. |
| 15. | This position also required ongoing diligence, as mishandling of funds could result in an unfavorable audit and defunding. | Ex. 17, Pl. Depo., at 126:19-22. |
| 16. | Plaintiff was reprimanded on more than one occasion for being tardy and not contacting her supervisor beforehand. | Ex. 17, Pl. Depo., 76:16-23, 176:19-177:25, 182:24-183:3, 204:16-21; Adams Decl., ¶¶ 13, 17, Ex. 10, "Documentation of incident," Ex. 14 "Documentation of incident." |
| 17. | Carl Adams found $30 from the Student Store in an envelope in Plaintiff's office, which Plaintiff admitted misplacing. | Adams Decl., ¶ 8, Ex. 7, "Email from Mr. Adams"; Ex. 17, Pl. Depo., 99:17-100:1, 123:19-124:13. |
| 18. | Plaintiff was reprimanded on March 25, 2013 for her attire.  Williams was sent home to change clothes and returned in pants that were | Ex. 17, Pl. Depo., 167:7-24, 205:14-19. |

FINDING OF UNCONTROVERTED FACTS AND CONTENTIONS OF LAW

| | | Defendant's Uncontroverted Material Facts | Defendant's Supporting Evidence |
|---|---|---|---|
| | | considered by her supervisor to be inappropriate and in violation of the dress code.  Plaintiff asked to be sent home for the rest of the day. | |
| | 19. | Plaintiff was reprimanded on approximately April 5, 2013 for speaking inappropriately to the Student Government Association President (*i.e.*, raised voice, and harsh tone, and for telling him to "*grow up and stop acting like a child*"). | Adams Decl., ¶¶ 10-12, Ex. 9, "Documentation from Mr. Adams"; Ex. 17, Pl. Depo. 142:12-143:20. |
| | 20. | Plaintiff was counseled on May 23, 2013 in connection with several "data integrity issues," including misclassifying a student as having "AWOL" status, and not timely submitting paperwork following a student's separation. | Adams Decl., ¶ 14, "Documentation of incident"; Ex. 11,"Email from Mr. Adams"; Ex. 17, Pl. Depo., 77:8-11, 106:25-107:22, 183:22-184:22. |
| | 21. | On June 17, 2013, Plaintiff was issued a Corrective Action Plan ("CAP"), which served as her final warning.  The CAP was based on Plaintiff ongoing tardiness, conflicts with coworkers, and failure to improve. | Adams Decl., ¶ 16, Ex. 13, "Corrective Action Plan"; Ex. 17, Pl. Depo., 200:5-201:17. |
| | 22. | On June 20, 2013, Plaintiff received her six-month review from her supervisor, Mr. Adams.  Plaintiff was rated an overall rating of 54 out of 100 possible points, which qualified as "Needs Improvement." | Adams Decl., ¶ 15, Ex. 12, "Performance Review"; Ex. 17, Pl. Depo. 159:4-160:9 |
| | 23. | On August 20, 2014, Plaintiff was issued a doctor's note from The Children's Clinic indicating that Plaintiff was unable to work until she was re-evaluated on September 3, 2013.  Neither the note nor Plaintiff indicated Plaintiff's symptoms or medical condition. | Ex. 17, Pl. Depo. 232:4-25, 233:11-19. |
| | 24. | In response to the August 20th doctor's note, Odle informed Plaintiff that she was not eligible for a leave of absence under the Family and Medical Leave Act ("FMLA") because she had not worked the requisite number of hours or the year of employment. | White Decl., ¶ 8, Ex. 3, "FMLA Letter"; Ex. 17, Pl. Depo., 241:7-242:1. |
| | 25. | However, Odle nonetheless afforded Plaintiff an accommodation by allowing her the time off work, as set forth in the doctor's note. | White Decl., ¶ 8, Ex. 3, "FMLA Letter"; Ex. 17, Pl. Depo., 241:7-242:1. |

FINDING OF UNCONTROVERTED FACTS AND CONTENTIONS OF LAW

| | | Defendant's Uncontroverted Material Facts | Defendant's Supporting Evidence |
|---|---|---|---|
| | 26. | Plaintiff was issued another doctor's note on September 3, 2013, which extended her leave through October 2, 2013. | Ex. 17, Pl. Depo., 248:17-20; White Decl., ¶ 15. |
| | 27. | During Plaintiff's leave of absence, Plaintiff's job duties were completed in large part by Plaintiff's supe28.rvisor, Carl Adams. | Adams Decl., ¶ 19; White Decl., ¶ 10. |
| | 28. | At the time, Mr. Adams was simultaneously serving as the CSI Manager (his own position) and the interim CSI Clerk (Plaintiff's position), while also performing the duties of another employee who had recently left. | Adams Decl., ¶ 19; White Decl., ¶ 10. |
| | 29. | As a result, there were delays in the administration of student's disciplinary reports and hearings. | Adams Decl., ¶ 20; White Decl., ¶ 9. |
| | 30. | During Plaintiff's leave of absence, Odle's students threatened to contact the Department of Labor ("DOL") to complain about the delays. | White Decl., ¶ 9. |
| | 31. | These complaints, if acted upon by the DOL, could result in Odle being docked funding or removed from the Job Corps program. | White Decl., ¶ 9, Adams Decl., ¶ 20. |
| | 32. | If Odle received a poor evaluation from the DOL, it would be reflected on the Contractors' Past Adjectival Rating ("CPAR"), which could negative affect contract award and funding. | Odle Decl., ¶ 11. |
| | 33. | Odle was genuinely concerned about the extended vacancy of the CSI Clerk position, particularly in light of the recent complaints by students and the ongoing delays in completing the Incident Reports and other tasks. | White Decl., ¶ 11; Odle Decl., ¶ 12, Declaration of Elsa Schwenker, filed concurrently with the Motion ("Schwenker Decl."), ¶ 12. |

| | | Defendant's Uncontroverted Material Facts | Defendant's Supporting Evidence |
|---|---|---|---|
| | 34. | Accordingly, when Odle received Plaintiff's September 3rd doctor's note, Dawn White (HR Manager) informed Plaintiff that if she did not return to work by September 6, 2013, Odle would need to post her position. | White Decl., ¶ 15; Ex. 17, Pl. Depo. 250:14-21. |
| | 35. | Ms. White informed Plaintiff that her employment was not being terminated and that upon her return to work, she would be provided with options for other available positions. | White Decl., ¶ 15; Ex. 17, Pl. Depo. 250:14-21. |
| | 36. | On September 17, 2013, Ms. White informed Williams that Odle could not hold her position that that it was being posted because Odle needed someone to perform her duties immediately. | White Decl., ¶ 16. |
| | 37. | The CSI position was filled on September 25, 2013 by an existing coworker, who immediately started to assume the CSI clerk duties. | White Decl., ¶ 17, Ex. 5, "Offer Letter." |
| | 38. | Ms. White again informed Plaintiff that her employment was not being terminated. | Ex. 17, Pl. Depo., 262:12-23. |
| | 39. | On September 25, 2013, Ms. White contacted Plaintiff and offered her an on-call residential advisor position, which paid a dollar more per hour than the CSI Clerk position. | Ex. 17, Pl. Depo., 264: 1-25; White Decl., ¶ 18. |
| | 40. | The position would further offer Plaintiff a flexible schedule under which she could work as much or as little as she desired. | Ex. 17, Pl. Depo., 264: 1-25; White Decl., ¶ 18. |
| | 41. | The position would further allow Plaintiff to schedule her shifts to accommodate her scheduling needs outside of the office, including any medical appointments. | Ex. 17, Pl. Depo., 264: 1-25; White Decl., ¶ 18. |
| | 42. | The position was also in a new department, which afforded Plaintiff the opportunity to | Ex. 17, Pl. Depo., 264: 1-25; White Decl., ¶ 18. |

6

| | | Defendant's Uncontroverted Material Facts | Defendant's Supporting Evidence |
|---|---|---|---|
| | | work under a different supervisor and avoid the stress that she had allegedly endured with Mr. Adams. | |
| | 43. | Plaintiff testified that she rejected the offer because it did not have a set schedule; however, Plaintiff admitted in deposition that she never asked about whether she could work up to 40 hours per week, and/or tailor the schedule to her needs. | Ex. 17, Pl. Depo., 265:4-267:25. |
| | 44. | Plaintiff simply refused the offer. | Ex. 17, Pl. Depo., 265:4-267:25. |
| | 45. | As such, and because no other positions were immediately available, Plaintiff's employment was terminated on September 25, 2013. | White Decl., ¶ 19. |
| | 46. | Odle did not make the decision to terminate Plaintiff's employment based on Plaintiff's medical condition. | White Decl., ¶ 22; Adams Decl., ¶ 24; Schwenker Decl., ¶ 19-20; Odle Decl., ¶ 19. |
| | 47. | Furthermore, Odle has afforded other employees with accommodations, such as extended leaves of absence and modified work schedules, due to their respective medical conditions. | White Decl., ¶ 24. |
| | 48. | On September 25, 2013, Ms. White informed Plaintiff that she would have other positions coming available in the near future, including the position of Scheduling Clerk. | Ex. 17, Pl. Depo., 268:1-15; White Decl., ¶ 18. |
| | 49. | The job descriptions for the On-Call RA and Scheduling Clerk positions were even included in the packet with her termination paperwork. | White Decl., ¶ 19. |
| | 50. | However, Plaintiff never inquired about returning to employment at Odle in any capacity. | Ex. 17, Pl. Depo., 287:9-11. |

7

| | | Defendant's Uncontroverted Material Facts | Defendant's Supporting Evidence |
|---|---|---|---|
| | | | |
| | 51. | On January 9, 2014, during a hearing before the Unemployment Insurance Appeals Board, Ms. White informed Plaintiff of at least one available position at Odle. | White Decl., ¶ 21; Ex. 17, Pl. Depo., 295:15-296:23. |
| | 52. | Plaintiff informed Ms. White that she was not interested in the position and not interested in working for Odle. | White Decl., ¶ 21; Ex. 17, Pl. Depo., 295:15-296:23. |

**ISSUE NO. 2:**   Judgment shall be entered in Odle's favor as to Plaintiff's second claim for relief for disability discrimination in violation of public policy, because, as a matter of law, the undisputed evidence establishes that Plaintiff cannot demonstrate that she was subject to any adverse employment action on account of a disability. Odle had a legitimate, non-discriminatory, business reason for terminating Plaintiff's employment, and Plaintiff failed to establish that Defendant's stated reasons are a pretext to mask unlawful disability discrimination.

| | | Defendant's Uncontroverted Material Facts | Defendant's Supporting Evidence |
|---|---|---|---|
| | 1. | Odle provides no-cost education and career technical training to low-income students between 16 and 24 years of age.  It operates as the Long Beach Job Corps, part of the Job Corps program administered by the U.S. Department of Labor. | Declaration of Lisa Odle, filed concurrently with the Motion ("Odle Decl."), ¶ 2. |
| | 2. | Its inclusion in the federally-funded program results in significant government oversight. This oversight includes audits and reporting obligations for its operations. | Odle Decl., ¶ 2. |
| | 3. | Long Beach Job Corps' campus consists of instructional space, for both classroom and technical learning.  The campus also includes dorm-style housing for its students, as well as an administration building. | Declaration of Carl Adams, filed concurrently with the Motion ("Adams Decl."), ¶ 4. |

| | | Defendant's Uncontroverted Material Facts | Defendant's Supporting Evidence |
|---|---|---|---|
| | 4. | Plaintiff was hired by Odle on November 5, 2012 as a clerk in the Center Standards & Initiatives department ("CSI Clerk"). | Declaration of Guillermo A. Escobedo, filed concurrently with the Motion, Exhibit 17 ("Pl. Depo."), 56:20-22, 58:1-16. |
| | 5. | Plaintiff was paid $12 per hour, and was always an at-will employee. | Ex. 17, Pl. Depo. at 63:6-11. |
| | 6. | Upon being hired, Plaintiff received a "Standards of Conduct" package, which includes guidelines as to what is "deemed acceptable or unacceptable conduct by any…employee," such as tardiness, absenteeism, breach of data integrity and insubordination. | Declaration of Dawn White, filed concurrently with the Motion ("White Decl."), ¶ 6, Ex. 2, "Standards of Conduct"; Ex. 17, Pl. Depo., 74:24-77:14. |
| | 7. | Plaintiff also received the Policies In Brief, which included policies concerning vacation, sick leave, and personal appearance. | Ex. 17, Pl. Depo. at 77:18-78:11. |
| | 8. | Odle also has in effect an Affirmative Action/Equal Employment Opportunity policy, which, in part, prohibits discrimination against its disabled employees.  Odle further has a policy requiring it to provide reasonable accommodation to its employees, which is posted in its facility. | White Decl., ¶ 6, Ex. 6, "Affirmative Action/Equal Employment Opportunity Policy." |
| | 9. | As a CSI Clerk, Plaintiff was responsible for various clerical duties and for assisting her supervisor, CSI Manager Carl Adams, in enforcing behavior management systems. | White Decl., ¶ 5, Ex. 1, CSI Clerk Job Description; Ex. 17, Pl. Depo., 292:24-293:12. |
| | 10. | As Plaintiff admits, the position was "*very demanding and very hands-on*," and required a level of "*trust*" with the students. | Ex. 17, Pl. Depo. 58:17-21, 60:17-24. |
| | 11. | The position required Plaintiff to handle 40-50 Incident Reports (i.e., disciplinary reports) per week. | Ex. 17, Pl. Depo., 114:17-20. |

9

| | | Defendant's Uncontroverted Material Facts | Defendant's Supporting Evidence |
|---|---|---|---|
| | 12. | Plaintiff only had a short timeframe – between two to seven days per Incident Report– in which to interview the disciplined student, coordinate with a fact-finding board, and process the paperwork. | Ex. 17, Pl. Depo. at 116:1-117:25. |
| | 13. | If these deadlines were not timely met, Odle could encounter issues with its governmental audit and could lose funding. | Adams Decl., ¶ 5. |
| | 14. | Plaintiff also served as the Student Government Advisor ("SGA"), in which she was responsible for meeting with the student government board twice a month, overseeing the student store and its funds, and assisting in organizing student events. | Ex. 17, Pl. Depo., 93:11-94:11. |
| | 15. | This position also required ongoing diligence, as mishandling of funds could result in an unfavorable audit and defunding. | Ex. 17, Pl. Depo., at 126:19-22. |
| | 16. | Plaintiff was reprimanded on more than one occasion for being tardy and not contacting her supervisor beforehand. | Ex. 17, Pl. Depo., 76:16-23, 176:19-177:25, 182:24-183:3, 204:16-21; Adams Decl., ¶¶ 13, 17, Ex. 10, "Documentation of incident," Ex. 14 "Documentation of incident." |
| | 17. | Carl Adams found $30 from the Student Store in an envelope in Plaintiff's office, which Plaintiff admitted misplacing. | Adams Decl., ¶ 8, Ex. 7, "Email from Mr. Adams"; Ex. 17, Pl. Depo., 99:17-100:1, 123:19-124:13. |
| | 18. | Plaintiff was reprimanded on March 25, 2013 for her attire.  Williams was sent home to change clothes and returned in pants that were considered by her supervisor to be inappropriate and in violation of the dress code.  Plaintiff asked to be sent home for the rest of the day. | Ex. 17, Pl. Depo., 167:7-24, 205:14-19. |
| | 19. | Plaintiff was reprimanded on approximately April 5, 2013 for speaking inappropriately to the Student Government Association President (*i.e.*, raised voice, and harsh tone, | Adams Decl., ¶¶ 10-12, Ex. 9, "Documentation from Mr. Adams"; Ex. 17, Pl. Depo. |

10

| | | Defendant's Uncontroverted Material Facts | Defendant's Supporting Evidence |
|---|---|---|---|
| | | and for telling him to "*grow up and stop acting like a child*"). | 142:12-143:20. |
| | 20. | Plaintiff was counseled on May 23, 2013 in connection with several "data integrity issues," including misclassifying a student as having "AWOL" status, and not timely submitting paperwork following a student's separation. | Adams Decl., ¶ 14, "Documentation of incident"; Ex. 11,"Email from Mr. Adams"; Ex. 17, Pl. Depo., 77:8-11, 106:25-107:22, 183:22-184:22. |
| | 21. | On June 17, 2013, Plaintiff was issued a Corrective Action Plan ("CAP"), which served as her final warning.  The CAP was based on Plaintiff ongoing tardiness, conflicts with coworkers, and failure to improve. | Adams Decl., ¶ 16, Ex. 13, "Corrective Action Plan"; Ex. 17, Pl. Depo., 200:5-201:17. |
| | 22. | On June 20, 2013, Plaintiff received her six-month review from her supervisor, Mr. Adams.  Plaintiff was rated an overall rating of 54 out of 100 possible points, which qualified as "Needs Improvement." . | Adams Decl., ¶ 15, Ex. 12, "Performance Review"; Ex. 17, Pl. Depo. 159:4-160:9 |
| | 23. | On August 20, 2014, Plaintiff was issued a doctor's note from The Children's Clinic indicating that Plaintiff was unable to work until she was re-evaluated on September 3, 2013.  Neither the note nor Plaintiff indicated Plaintiff's symptoms or medical condition. | Ex. 17, Pl. Depo. 232:4-25, 233:11-19. |
| | 24. | In response to the August 20th doctor's note, Odle informed Plaintiff that she was not eligible for a leave of absence under the Family and Medical Leave Act ("FMLA") because she had not worked the requisite number of hours or the year of employment. | White Decl., ¶ 8, Ex. 3, "FMLA Letter"; Ex. 17, Pl. Depo., 241:7-242:1. |
| | 25. | However, Odle nonetheless afforded Plaintiff an accommodation by allowing her the time off work, as set forth in the doctor's note. | White Decl., ¶ 8, Ex. 3, "FMLA Letter"; Ex. 17, Pl. Depo., 241:7-242:1. |
| | 26. | Plaintiff was issued another doctor's note on September 3, 2013, which extended her leave through October 2, 2013. | Ex. 17, Pl. Depo., 248:17-20; White Decl., ¶ 15. |

FINDING OF UNCONTROVERTED FACTS AND CONTENTIONS OF LAW

| | | Defendant's Uncontroverted Material Facts | Defendant's Supporting Evidence |
|---|---|---|---|
| | 27. | During Plaintiff's leave of absence, Plaintiff's job duties were completed in large part by Plaintiff's supervisor, Carl Adams. | Adams Decl., ¶ 19; White Decl., ¶ 10. |
| | 28. | At the time, Mr. Adams was simultaneously serving as the CSI Manager (his own position) and the interim CSI Clerk (Plaintiff's position), while also performing the duties of another employee who had recently left. | Adams Decl., ¶ 19; White Decl., ¶ 10. |
| | 29. | As a result, there were delays in the administration of student's disciplinary reports and hearings. | Adams Decl., ¶ 20; White Decl., ¶ 9. |
| | 30. | During Plaintiff's leave of absence, Odle's students threatened to contact the Department of Labor ("DOL") to complain about the delays. | White Decl., ¶ 9. |
| | 31. | These complaints, if acted upon by the DOL, could result in Odle being docked funding or removed from the Job Corps program. | White Decl., ¶ 9, Adams Decl., ¶ 20. |
| | 32. | If Odle received a poor evaluation from the DOL, it would be reflected on the Contractors' Past Adjectival Rating ("CPAR"), which could negative affect contract award and funding. | Odle Decl., ¶ 11. |
| | 33. | Odle was genuinely concerned about the extended vacancy of the CSI Clerk position, particularly in light of the recent complaints by students and the ongoing delays in completing the Incident Reports and other tasks. | White Decl., ¶ 11; Odle Decl., ¶ 12, Declaration of Elsa Schwenker, filed concurrently with the Motion ("Schwenker Decl."), ¶ 12. |
| | 34. | Accordingly, when Odle received Plaintiff's September 3rd doctor's note, Dawn White (HR Manager) informed Plaintiff that if she did not return to work by September 6, 2013, Odle would need to post her position. | White Decl., ¶ 15; Ex. 17, Pl. Depo. 250:14-21. |

12

| | | Defendant's Uncontroverted Material Facts | Defendant's Supporting Evidence |
|---|---|---|---|
| | 35. | Ms. White informed Plaintiff that her employment was not being terminated and that upon her return to work, she would be provided with options for other available positions. | White Decl., ¶ 15; Ex. 17, Pl. Depo. 250:14-21. |
| | 36. | On September 17, 2013, Ms. White informed Williams that Odle could not hold her position that that it was being posted because Odle needed someone to perform her duties immediately. | White Decl., ¶ 16. |
| | 37. | The CSI position was filled on September 25, 2013 by an existing coworker, who immediately started to assume the CSI clerk duties. | White Decl., ¶ 17, Ex. 5, "Offer Letter." |
| | 38. | Ms. White again informed Plaintiff that her employment was not being terminated. | Ex. 17, Pl. Depo., 262:12-23. |
| | 39. | On September 25, 2013, Ms. White contacted Plaintiff and offered her an on-call residential advisor position, which paid a dollar more per hour than the CSI Clerk position. | Ex. 17, Pl. Depo., 264: 1-25; White Decl., ¶ 18. |
| | 40. | The position would further offer Plaintiff a flexible schedule under which she could work as much or as little as she desired. | Ex. 17, Pl. Depo., 264: 1-25; White Decl., ¶ 18. |
| | 41. | The position would further allow Plaintiff to schedule her shifts to accommodate her scheduling needs outside of the office, including any medical appointments. | Ex. 17, Pl. Depo., 264: 1-25; White Decl., ¶ 18. |
| | 42. | The position was also in a new department, which afforded Plaintiff the opportunity to work under a different supervisor and avoid the stress that she had allegedly endured with Mr. Adams. | Ex. 17, Pl. Depo., 264: 1-25; White Decl., ¶ 18. |

13

| | | Defendant's Uncontroverted Material Facts | Defendant's Supporting Evidence |
|---|---|---|---|
| | 43. | Plaintiff testified that she rejected the offer because it did not have a set schedule; however, Plaintiff admitted in deposition that she never asked about whether she could work up to 40 hours per week, and/or tailor the schedule to her needs. | Ex. 17, Pl. Depo., 265:4-267:25. |
| | 44. | Plaintiff simply refused the offer. | Ex. 17, Pl. Depo., 265:4-267:25. |
| | 45. | As such, and because no other positions were immediately available, Plaintiff's employment was terminated on September 25, 2013. | White Decl., ¶ 19. |
| | 46. | Odle did not make the decision to terminate Plaintiff's employment based on Plaintiff's medical condition. | White Decl., ¶ 22; Adams Decl., ¶ 24; Schwenker Decl., ¶ 19-20; Odle Decl., ¶ 19. |
| | 47. | Furthermore, Odle has afforded other employees with accommodations, such as extended leaves of absence and modified work schedules, due to their respective medical conditions. | White Decl., ¶ 24. |
| | 48. | On September 25, 2013, Ms. White informed Plaintiff that she would have other positions coming available in the near future, including the position of Scheduling Clerk. | Ex. 17, Pl. Depo., 268:1-15; White Decl., ¶ 18. |
| | 49. | The job descriptions for the On-Call RA and Scheduling Clerk positions were even included in the packet with her termination paperwork. | White Decl., ¶ 19. |
| | 50. | However, Plaintiff never inquired about returning to employment at Odle in any capacity. | Ex. 17, Pl. Depo., 287:9-11. |
| | 51. | On January 9, 2014, during a hearing before the Unemployment Insurance Appeals Board, Ms. White informed Plaintiff of at least one available position at Odle. | White Decl., ¶ 21; Ex. 17, Pl. Depo., 295:15-296:23. |

14

| | Defendant's Uncontroverted Material Facts | Defendant's Supporting Evidence |
|---|---|---|
| | | |
| 52. | Plaintiff informed Ms. White that she was not interested in the position and not interested in working for Odle. | White Decl., ¶ 21; Ex. 17, Pl. Depo., 295:15-296:23. |

**ISSUE NO. 3:**  Judgment should be entered in Odle's favor as to Plaintiff's third claim for relief for failure to accommodate in violation of the FEHA, because, as a matter of law, the undisputed evidence establishes that Odle offered Plaintiff reasonable accommodations, which Plaintiff refused.

| | Defendant's Uncontroverted Material Facts | Defendant's Supporting Evidence |
|---|---|---|
| 1. | Odle provides no-cost education and career technical training to low-income students between 16 and 24 years of age.  It operates as the Long Beach Job Corps, part of the Job Corps program administered by the U.S. Department of Labor. | Declaration of Lisa Odle, filed concurrently with the Motion ("Odle Decl."), ¶ 2. |
| 2. | Its inclusion in the federally-funded program results in significant government oversight.  This oversight includes audits and reporting obligations for its operations. | Odle Decl., ¶ 2. |
| 3. | Long Beach Job Corps' campus consists of instructional space, for both classroom and technical learning.  The campus also includes dorm-style housing for its students, as well as an administration building. | Declaration of Carl Adams, filed concurrently with the Motion ("Adams Decl."), ¶ 4. |
| 4. | Plaintiff was hired by Odle on November 5, 2012 as a clerk in the Center Standards & Initiatives department ("CSI Clerk"). | Declaration of Guillermo A. Escobedo, filed concurrently with the Motion, Exhibit 17 ("Pl. Depo."), 56:20-22, 58:1-16. |
| 5. | Plaintiff was paid $12 per hour, and was always an at-will employee. | Ex. 17, Pl. Depo. at 63:6-11. |
| 6. | Upon being hired, Plaintiff received a "Standards of Conduct" package, which includes guidelines as to what is "deemed | Declaration of Dawn White, filed concurrently with the Motion ("White Decl."), ¶ 6, |

15

FINDING OF UNCONTROVERTED FACTS AND CONTENTIONS OF LAW

| | Defendant's Uncontroverted Material Facts | Defendant's Supporting Evidence |
|---|---|---|
| | acceptable or unacceptable conduct by any…employee," such as tardiness, absenteeism, breach of data integrity and insubordination. | Ex. 2, "Standards of Conduct"; Ex. 17, Pl. Depo., 74:24-77:14. |
| 7. | Plaintiff also received the Policies In Brief, which included policies concerning vacation, sick leave, and personal appearance. | Ex. 17, Pl. Depo. at 77:18-78:11. |
| 8. | Odle also has in effect an Affirmative Action/Equal Employment Opportunity policy, which, in part, prohibits discrimination against its disabled employees.  Odle further has a policy requiring it to provide reasonable accommodation to its employees, which is posted in its facility. | White Decl., ¶ 6, Ex. 6, "Affirmative Action/Equal Employment Opportunity Policy." |
| 9. | As a CSI Clerk, Plaintiff was responsible for various clerical duties and for assisting her supervisor, CSI Manager Carl Adams, in enforcing behavior management systems. | White Decl., ¶ 5, Ex. 1, CSI Clerk Job Description; Ex. 17, Pl. Depo., 292:24-293:12. |
| 10. | As Plaintiff admits, the position was "*very demanding and very hands-on,*" and required a level of "*trust*" with the students. | Ex. 17, Pl. Depo. 58:17-21, 60:17-24. |
| 11. | The position required Plaintiff to handle 40-50 Incident Reports (i.e., disciplinary reports) per week. | Ex. 17, Pl. Depo., 114:17-20. |
| 12. | Plaintiff only had a short timeframe – between two to seven days per Incident Report– in which to interview the disciplined student, coordinate with a fact-finding board, and process the paperwork. | Ex. 17, Pl. Depo. at 116:1-117:25. |
| 13. | If these deadlines were not timely met, Odle could encounter issues with its governmental audit and could lose funding. | Adams Decl., ¶ 5. |
| 14. | Plaintiff also served as the Student | Ex. 17, Pl. Depo., 93:11- |

16

| | Defendant's Uncontroverted Material Facts | Defendant's Supporting Evidence |
|---|---|---|
| | Government Advisor ("SGA"), in which she was responsible for meeting with the student government board twice a month, overseeing the student store and its funds, and assisting in organizing student events. | 94:11. |
| 15. | This position also required ongoing diligence, as mishandling of funds could result in an unfavorable audit and defunding. | Ex. 17, Pl. Depo., at 126:19-22. |
| 16. | Plaintiff was reprimanded on more than one occasion for being tardy and not contacting her supervisor beforehand. | Ex. 17, Pl. Depo., 76:16-23, 176:19-177:25, 182:24-183:3, 204:16-21; Adams Decl., ¶¶ 13, 17, Ex. 10, "Documentation of incident," Ex. 14 "Documentation of incident." |
| 17. | Carl Adams found $30 from the Student Store in an envelope in Plaintiff's office, which Plaintiff admitted misplacing. | Adams Decl., ¶ 8, Ex. 7, "Email from Mr. Adams"; Ex. 17, Pl. Depo., 99:17-100:1, 123:19-124:13. |
| 18. | Plaintiff was reprimanded on March 25, 2013 for her attire. Williams was sent home to change clothes and returned in pants that were considered by her supervisor to be inappropriate and in violation of the dress code. Plaintiff asked to be sent home for the rest of the day. | Ex. 17, Pl. Depo., 167:7-24, 205:14-19. |
| 19. | Plaintiff was reprimanded on approximately April 5, 2013 for speaking inappropriately to the Student Government Association President (*i.e.*, raised voice, and harsh tone, and for telling him to "*grow up and stop acting like a child*"). | Adams Decl., ¶¶ 10-12, Ex. 9, "Documentation from Mr. Adams"; Ex. 17, Pl. Depo. 142:12-143:20. |
| 20. | Plaintiff was counseled on May 23, 2013 in connection with several "data integrity issues," including misclassifying a student as having "AWOL" status, and not timely submitting paperwork following a student's separation. | Adams Decl., ¶ 14, "Documentation of incident"; Ex. 11, "Email from Mr. Adams"; Ex. 17, Pl. Depo., 77:8-11, 106:25-107:22, 183:22-184:22. |

17

FINDING OF UNCONTROVERTED FACTS AND CONTENTIONS OF LAW

| | | Defendant's Uncontroverted Material Facts | Defendant's Supporting Evidence |
|---|---|---|---|
| | 21. | On June 17, 2013, Plaintiff was issued a Corrective Action Plan ("CAP"), which served as her final warning.  The CAP was based on Plaintiff ongoing tardiness, conflicts with coworkers, and failure to improve. | Adams Decl., ¶ 16, Ex. 13, "Corrective Action Plan"; Ex. 17, Pl. Depo., 200:5-201:17. |
| | 22. | On June 20, 2013, Plaintiff received her six-month review from her supervisor, Mr. Adams.  Plaintiff was rated an overall rating of 54 out of 100 possible points, which qualified as "Needs Improvement." . | Adams Decl., ¶ 15, Ex. 12, "Performance Review"; Ex. 17, Pl. Depo. 159:4-160:9 |
| | 23. | On August 20, 2014, Plaintiff was issued a doctor's note from The Children's Clinic indicating that Plaintiff was unable to work until she was re-evaluated on September 3, 2013.  Neither the note nor Plaintiff indicated Plaintiff's symptoms or medical condition. | Ex. 17, Pl. Depo. 232:4-25, 233:11-19. |
| | 24. | In response to the August 20th doctor's note, Odle informed Plaintiff that she was not eligible for a leave of absence under the Family and Medical Leave Act ("FMLA") because she had not worked the requisite number of hours or the year of employment. | White Decl., ¶ 8, Ex. 3, "FMLA Letter"; Ex. 17, Pl. Depo., 241:7-242:1. |
| | 25. | However, Odle nonetheless afforded Plaintiff an accommodation by allowing her the time off work, as set forth in the doctor's note. | White Decl., ¶ 8, Ex. 3, "FMLA Letter"; Ex. 17, Pl. Depo., 241:7-242:1. |
| | 26. | Plaintiff was issued another doctor's note on September 3, 2013, which extended her leave through October 2, 2013. | Ex. 17, Pl. Depo., 248:17-20; White Decl., ¶ 15. |
| | 27. | During Plaintiff's leave of absence, Plaintiff's job duties were completed in large part by Plaintiff's supervisor, Carl Adams. | Adams Decl., ¶ 19; White Decl., ¶ 10. |
| | 28. | At the time, Mr. Adams was simultaneously serving as the CSI Manager (his own position) and the interim CSI Clerk (Plaintiff's position), while also performing the duties of another employee who had recently left. | Adams Decl., ¶ 19; White Decl., ¶ 10. |

18

FINDING OF UNCONTROVERTED FACTS AND CONTENTIONS OF LAW

| | | Defendant's Uncontroverted Material Facts | Defendant's Supporting Evidence |
|---|---|---|---|
| | | | |
| | 29. | As a result, there were delays in the administration of student's disciplinary reports and hearings. | Adams Decl., ¶ 20; White Decl., ¶ 9. |
| | 30. | During Plaintiff's leave of absence, Odle's students threatened to contact the Department of Labor ("DOL") to complain about the delays. | White Decl., ¶ 9. |
| | 31. | These complaints, if acted upon by the DOL, could result in Odle being docked funding or removed from the Job Corps program. | White Decl., ¶ 9, Adams Decl., ¶ 20. |
| | 32. | If Odle received a poor evaluation from the DOL, it would be reflected on the Contractors' Past Adjectival Rating ("CPAR"), which could negative affect contract award and funding. | Odle Decl., ¶ 11. |
| | 33. | Odle was genuinely concerned about the extended vacancy of the CSI Clerk position, particularly in light of the recent complaints by students and the ongoing delays in completing the Incident Reports and other tasks. | White Decl., ¶ 11; Odle Decl., ¶ 12, Declaration of Elsa Schwenker, filed concurrently with the Motion ("Schwenker Decl."), ¶ 12. |
| | 34. | Accordingly, when Odle received Plaintiff's September 3rd doctor's note, Dawn White (HR Manager) informed Plaintiff that if she did not return to work by September 6, 2013, Odle would need to post her position. | White Decl., ¶ 15; Ex. 17, Pl. Depo. 250:14-21. |
| | 35. | Ms. White informed Plaintiff that her employment was not being terminated and that upon her return to work, she would be provided with options for other available positions. | White Decl., ¶ 15; Ex. 17, Pl. Depo. 250:14-21. |
| | 36. | On September 17, 2013, Ms. White informed Williams that Odle could not hold her position that that it was being posted because Odle needed someone to perform her duties | White Decl., ¶ 16. |

19

FINDING OF UNCONTROVERTED FACTS AND CONTENTIONS OF LAW

| | Defendant's Uncontroverted Material Facts | Defendant's Supporting Evidence |
|---|---|---|
| | immediately. | |
| 37. | The CSI position was filled on September 25, 2013 by an existing coworker, who immediately started to assume the CSI clerk duties. | White Decl., ¶ 17, Ex. 5, "Offer Letter." |
| 38. | Ms. White again informed Plaintiff that her employment was not being terminated. | Ex. 17, Pl. Depo., 262:12-23. |
| 39. | On September 25, 2013, Ms. White contacted Plaintiff and offered her an on-call residential advisor position, which paid a dollar more per hour than the CSI Clerk position. | Ex. 17, Pl. Depo., 264: 1-25; White Decl., ¶ 18. |
| 40. | The position would further offer Plaintiff a flexible schedule under which she could work as much or as little as she desired. | Ex. 17, Pl. Depo., 264: 1-25; White Decl., ¶ 18. |
| 41. | The position would further allow Plaintiff to schedule her shifts to accommodate her scheduling needs outside of the office, including any medical appointments. | Ex. 17, Pl. Depo., 264: 1-25; White Decl., ¶ 18. |
| 42. | The position was also in a new department, which afforded Plaintiff the opportunity to work under a different supervisor and avoid the stress that she had allegedly endured with Mr. Adams. | Ex. 17, Pl. Depo., 264: 1-25; White Decl., ¶ 18. |
| 43. | Plaintiff testified that she rejected the offer because it did not have a set schedule; however, Plaintiff admitted in deposition that she never asked about whether she could work up to 40 hours per week, and/or tailor the schedule to her needs. | Ex. 17, Pl. Depo., 265:4-267:25. |
| 44. | Plaintiff simply refused the offer. | Ex. 17, Pl. Depo., 265:4-267:25. |
| 45. | As such, and because no other positions were immediately available, Plaintiff's | White Decl., ¶ 19. |

| | Defendant's Uncontroverted Material Facts | Defendant's Supporting Evidence |
|---|---|---|
| | employment was terminated on September 25, 2013. | |
| 46. | Odle did not make the decision to terminate Plaintiff's employment based on Plaintiff's medical condition. | White Decl., ¶ 22; Adams Decl., ¶ 24; Schwenker Decl., ¶ 19-20; Odle Decl., ¶ 19. |
| 47. | Furthermore, Odle has afforded other employees with accommodations, such as extended leaves of absence and modified work schedules, due to their respective medical conditions. | White Decl., ¶ 24. |
| 48. | On September 25, 2013, Ms. White informed Plaintiff that she would have other positions coming available in the near future, including the position of Scheduling Clerk. | Ex. 17, Pl. Depo., 268:1-15; White Decl., ¶ 18. |
| 49. | The job descriptions for the On-Call RA and Scheduling Clerk positions were even included in the packet with her termination paperwork. | White Decl., ¶ 19. |
| 50. | However, Plaintiff never inquired about returning to employment at Odle in any capacity. | Ex. 17, Pl. Depo., 287:9-11. |
| 51. | On January 9, 2014, during a hearing before the Unemployment Insurance Appeals Board, Ms. White informed Plaintiff of at least one available position at Odle. | White Decl., ¶ 21; Ex. 17, Pl. Depo., 295:15-296:23. |
| 52. | Plaintiff informed Ms. White that she was not interested in the position and not interested in working for Odle. | White Decl., ¶ 21; Ex. 17, Pl. Depo., 295:15-296:23. |

**ISSUE NO. 4:**   Judgment shall be entered in Odle's favor as to Plaintiff's fourth cause of action for failure to prevent discrimination from occurring in violation of FEHA because, as a matter of law, the undisputed evidence demonstrates that

21

1  Plaintiff cannot establish that she was discriminated against by Odle because of her

2  disability.

| | Defendant's Uncontroverted Material Facts | Defendant's Supporting Evidence |
|---|---|---|
| 1. | Odle provides no-cost education and career technical training to low-income students between 16 and 24 years of age. It operates as the Long Beach Job Corps, part of the Job Corps program administered by the U.S. Department of Labor. | Declaration of Lisa Odle, filed concurrently with the Motion ("Odle Decl."), ¶ 2. |
| 2. | Its inclusion in the federally-funded program results in significant government oversight. This oversight includes audits and reporting obligations for its operations. | Odle Decl., ¶ 2. |
| 3. | Long Beach Job Corps' campus consists of instructional space, for both classroom and technical learning. The campus also includes dorm-style housing for its students, as well as an administration building. | Declaration of Carl Adams, filed concurrently with the Motion ("Adams Decl."), ¶ 4. |
| 4. | Plaintiff was hired by Odle on November 5, 2012 as a clerk in the Center Standards & Initiatives department ("CSI Clerk"). | Declaration of Guillermo A. Escobedo, filed concurrently with the Motion, Exhibit 17 ("Pl. Depo."), 56:20-22, 58:1-16. |
| 5. | Plaintiff was paid $12 per hour, and was always an at-will employee. | Ex. 17, Pl. Depo. at 63:6-11. |
| 6. | Upon being hired, Plaintiff received a "Standards of Conduct" package, which includes guidelines as to what is "deemed acceptable or unacceptable conduct by any…employee," such as tardiness, absenteeism, breach of data integrity and insubordination. | Declaration of Dawn White, filed concurrently with the Motion ("White Decl."), ¶ 6, Ex. 2, "Standards of Conduct"; Ex. 17, Pl. Depo., 74:24-77:14. |
| 7. | Plaintiff also received the Policies In Brief, which included policies concerning vacation, sick leave, and personal appearance. | Ex. 17, Pl. Depo. at 77:18-78:11. |
| 8. | Odle also has in effect an Affirmative Action/Equal Employment Opportunity policy, which, in part, prohibits | White Decl., ¶ 6, Ex. 6, "Affirmative Action/Equal Employment Opportunity |

| | | Defendant's Uncontroverted Material Facts | Defendant's Supporting Evidence |
|---|---|---|---|
| | | discrimination against its disabled employees.  Odle further has a policy requiring it to provide reasonable accommodation to its employees, which is posted in its facility. | Policy." |
| | 9. | As a CSI Clerk, Plaintiff was responsible for various clerical duties and for assisting her supervisor, CSI Manager Carl Adams, in enforcing behavior management systems. | White Decl., ¶ 5, Ex. 1, CSI Clerk Job Description; Ex. 17, Pl. Depo., 292:24-293:12. |
| | 10. | As Plaintiff admits, the position was "*very demanding and very hands-on*," and required a level of "*trust*" with the students. | Ex. 17, Pl. Depo. 58:17-21, 60:17-24. |
| | 11. | The position required Plaintiff to handle 40-50 Incident Reports (i.e., disciplinary reports) per week. | Ex. 17, Pl. Depo., 114:17-20. |
| | 12. | Plaintiff only had a short timeframe – between two to seven days per Incident Report– in which to interview the disciplined student, coordinate with a fact-finding board, and process the paperwork. | Ex. 17, Pl. Depo. at 116:1-117:25. |
| | 13. | If these deadlines were not timely met, Odle could encounter issues with its governmental audit and could lose funding. | Adams Decl., ¶ 5. |
| | 14. | Plaintiff also served as the Student Government Advisor ("SGA"), in which she was responsible for meeting with the student government board twice a month, overseeing the student store and its funds, and assisting in organizing student events. | Ex. 17, Pl. Depo., 93:11-94:11. |
| | 15. | This position also required ongoing diligence, as mishandling of funds could result in an unfavorable audit and defunding. | Ex. 17, Pl. Depo.,  at 126:19-22. |
| | 16. | Plaintiff was reprimanded on more than one occasion for being tardy and not contacting | Ex. 17, Pl. Depo., 76:16-23, 176:19-177:25, 182:24-183:3, |

23

| Defendant's Uncontroverted Material Facts | Defendant's Supporting Evidence |
|---|---|
| her supervisor beforehand. | 204:16-21; Adams Decl., ¶¶ 13, 17, Ex. 10, "Documentation of incident," Ex. 14 "Documentation of incident." |
| 17. Carl Adams found $30 from the Student Store in an envelope in Plaintiff's office, which Plaintiff admitted misplacing. | Adams Decl., ¶ 8, Ex. 7, "Email from Mr. Adams"; Ex. 17, Pl. Depo., 99:17-100:1, 123:19-124:13. |
| 18. Plaintiff was reprimanded on March 25, 2013 for her attire.  Williams was sent home to change clothes and returned in pants that were considered by her supervisor to be inappropriate and in violation of the dress code.  Plaintiff asked to be sent home for the rest of the day. | Ex. 17, Pl. Depo., 167:7-24, 205:14-19. |
| 19. Plaintiff was reprimanded on approximately April 5, 2013 for speaking inappropriately to the Student Government Association President (*i.e.*, raised voice, and harsh tone, and for telling him to "*grow up and stop acting like a child*"). | Adams Decl., ¶¶ 10-12, Ex. 9, "Documentation from Mr. Adams"; Ex. 17, Pl. Depo. 142:12-143:20. |
| 20. Plaintiff was counseled on May 23, 2013 in connection with several "data integrity issues," including misclassifying a student as having "AWOL" status, and not timely submitting paperwork following a student's separation. | Adams Decl., ¶ 14, "Documentation of incident"; Ex. 11,"Email from Mr. Adams"; Ex. 17, Pl. Depo., 77:8-11, 106:25-107:22, 183:22-184:22. |
| 21. On June 17, 2013, Plaintiff was issued a Corrective Action Plan ("CAP"), which served as her final warning.  The CAP was based on Plaintiff ongoing tardiness, conflicts with coworkers, and failure to improve. | Adams Decl., ¶ 16, Ex. 13, "Corrective Action Plan"; Ex. 17, Pl. Depo., 200:5-201:17. |
| 22. On June 20, 2013, Plaintiff received her six-month review from her supervisor, Mr. Adams.  Plaintiff was rated an overall rating of 54 out of 100 possible points, which qualified as "Needs Improvement." . | Adams Decl., ¶ 15, Ex. 12, "Performance Review"; Ex. 17, Pl. Depo. 159:4-160:9 |

24

FINDING OF UNCONTROVERTED FACTS AND CONTENTIONS OF LAW

|  | | **Defendant's Uncontroverted Material Facts** | **Defendant's Supporting Evidence** |
|---|---|---|---|
| 23. | | On August 20, 2014, Plaintiff was issued a doctor's note from The Children's Clinic indicating that Plaintiff was unable to work until she was re-evaluated on September 3, 2013.  Neither the note nor Plaintiff indicated Plaintiff's symptoms or medical condition. | Ex. 17, Pl. Depo. 232:4-25, 233:11-19. |
| 24. | | In response to the August 20th doctor's note, Odle informed Plaintiff that she was not eligible for a leave of absence under the Family and Medical Leave Act ("FMLA") because she had not worked the requisite number of hours or the year of employment. | White Decl., ¶ 8, Ex. 3, "FMLA Letter"; Ex. 17, Pl. Depo., 241:7-242:1. |
| 25. | | However, Odle nonetheless afforded Plaintiff an accommodation by allowing her the time off work, as set forth in the doctor's note. | White Decl., ¶ 8, Ex. 3, "FMLA Letter"; Ex. 17, Pl. Depo., 241:7-242:1. |
| 26. | | Plaintiff was issued another doctor's note on September 3, 2013, which extended her leave through October 2, 2013. | Ex. 17, Pl. Depo., 248:17-20; White Decl., ¶ 15. |
| 27. | | During Plaintiff's leave of absence, Plaintiff's job duties were completed in large part by Plaintiff's supervisor, Carl Adams. | Adams Decl., ¶ 19; White Decl., ¶ 10. |
| 28. | | At the time, Mr. Adams was simultaneously serving as the CSI Manager (his own position) and the interim CSI Clerk (Plaintiff's position), while also performing the duties of another employee who had recently left. | Adams Decl., ¶ 19; White Decl., ¶ 10. |
| 29. | | As a result, there were delays in the administration of student's disciplinary reports and hearings. | Adams Decl., ¶ 20; White Decl., ¶ 9. |
| 30. | | During Plaintiff's leave of absence, Odle's students threatened to contact the Department of Labor ("DOL") to complain about the delays. | White Decl., ¶ 9. |
| 31. | | These complaints, if acted upon by the DOL, could result in Odle being docked funding or | White Decl., ¶ 9, Adams |

| | Defendant's Uncontroverted Material Facts | Defendant's Supporting Evidence |
|---|---|---|
| | removed from the Job Corps program. | Decl., ¶ 20. |
| 32. | If Odle received a poor evaluation from the DOL, it would be reflected on the Contractors' Past Adjectival Rating ("CPAR"), which could negative affect contract award and funding. | Odle Decl., ¶ 11. |
| 33. | Odle was genuinely concerned about the extended vacancy of the CSI Clerk position, particularly in light of the recent complaints by students and the ongoing delays in completing the Incident Reports and other tasks. | White Decl., ¶ 11; Odle Decl., ¶ 12, Declaration of Elsa Schwenker, filed concurrently with the Motion ("Schwenker Decl."), ¶ 12. |
| 34. | Accordingly, when Odle received Plaintiff's September 3rd doctor's note, Dawn White (HR Manager) informed Plaintiff that if she did not return to work by September 6, 2013, Odle would need to post her position. | White Decl., ¶ 15; Ex. 17, Pl. Depo. 250:14-21. |
| 35. | Ms. White informed Plaintiff that her employment was not being terminated and that upon her return to work, she would be provided with options for other available positions. | White Decl., ¶ 15; Ex. 17, Pl. Depo. 250:14-21. |
| 36. | On September 17, 2013, Ms. White informed Williams that Odle could not hold her position that that it was being posted because Odle needed someone to perform her duties immediately. | White Decl., ¶ 16. |
| 37. | The CSI position was filled on September 25, 2013 by an existing coworker, who immediately started to assume the CSI clerk duties. | White Decl., ¶ 17, Ex. 5, "Offer Letter." |
| 38. | Ms. White again informed Plaintiff that her employment was not being terminated. | Ex. 17, Pl. Depo., 262:12-23. |
| 39. | On September 25, 2013, Ms. White contacted | Ex. 17, Pl. Depo., 264: 1-25; |

FINDING OF UNCONTROVERTED FACTS AND CONTENTIONS OF LAW

| | | Defendant's Uncontroverted Material Facts | Defendant's Supporting Evidence |
|---|---|---|---|
| | | Plaintiff and offered her an on-call residential advisor position, which paid a dollar more per hour than the CSI Clerk position. | White Decl., ¶ 18. |
| | 40. | The position would further offer Plaintiff a flexible schedule under which she could work as much or as little as she desired. | Ex. 17, Pl. Depo., 264: 1-25; White Decl., ¶ 18. |
| | 41. | The position would further allow Plaintiff to schedule her shifts to accommodate her scheduling needs outside of the office, including any medical appointments. | Ex. 17, Pl. Depo., 264: 1-25; White Decl., ¶ 18. |
| | 42. | The position was also in a new department, which afforded Plaintiff the opportunity to work under a different supervisor and avoid the stress that she had allegedly endured with Mr. Adams. | Ex. 17, Pl. Depo., 264: 1-25; White Decl., ¶ 18. |
| | 43. | Plaintiff testified that she rejected the offer because it did not have a set schedule; however, Plaintiff admitted in deposition that she never asked about whether she could work up to 40 hours per week, and/or tailor the schedule to her needs. | Ex. 17, Pl. Depo., 265:4-267:25. |
| | 44. | Plaintiff simply refused the offer. | Ex. 17, Pl. Depo., 265:4-267:25. |
| | 45. | As such, and because no other positions were immediately available, Plaintiff's employment was terminated on September 25, 2013. | White Decl., ¶ 19. |
| | 46. | Odle did not make the decision to terminate Plaintiff's employment based on Plaintiff's medical condition. | White Decl., ¶ 22; Adams Decl., ¶ 24; Schwenker Decl., ¶ 19-20; Odle Decl., ¶ 19. |
| | 47. | Furthermore, Odle has afforded other employees with accommodations, such as extended leaves of absence and modified work schedules, due to their respective medical conditions. | White Decl., ¶ 24. |

| | Defendant's Uncontroverted Material Facts | Defendant's Supporting Evidence |
|---|---|---|
| 48. | On September 25, 2013, Ms. White informed Plaintiff that she would have other positions coming available in the near future, including the position of Scheduling Clerk. | Ex. 17, Pl. Depo., 268:1-15; White Decl., ¶ 18. |
| 49. | The job descriptions for the On-Call RA and Scheduling Clerk positions were even included in the packet with her termination paperwork. | White Decl., ¶ 19. |
| 50. | However, Plaintiff never inquired about returning to employment at Odle in any capacity. | Ex. 17, Pl. Depo., 287:9-11. |
| 51. | On January 9, 2014, during a hearing before the Unemployment Insurance Appeals Board, Ms. White informed Plaintiff of at least one available position at Odle. | White Decl., ¶ 21; Ex. 17, Pl. Depo., 295:15-296:23. |
| 52. | Plaintiff informed Ms. White that she was not interested in the position and not interested in working for Odle. | White Decl., ¶ 21; Ex. 17, Pl. Depo., 295:15-296:23. |

**ISSUE NO. 5:**  Judgment should be entered in Odle's favor as to Plaintiff's claim for punitive damages because, as a matter of law, Plaintiff cannot establish by clear and convincing evidence that Odle committed an act of oppression, fraud or malice.

| | Defendant's Uncontroverted Material Facts | Defendant's Supporting Evidence |
|---|---|---|
| 1. | Odle provides no-cost education and career technical training to low-income students between 16 and 24 years of age.  It operates as the Long Beach Job Corps, part of the Job Corps program administered by the U.S. Department of Labor. | Declaration of Lisa Odle, filed concurrently with the Motion ("Odle Decl."), ¶ 2. |
| 2. | Its inclusion in the federally-funded program results in significant government oversight. This oversight includes audits and reporting obligations for its operations. | Odle Decl., ¶ 2. |

| | Defendant's Uncontroverted Material Facts | Defendant's Supporting Evidence |
|---|---|---|
| 3. | Long Beach Job Corps' campus consists of instructional space, for both classroom and technical learning.  The campus also includes dorm-style housing for its students, as well as an administration building. | Declaration of Carl Adams, filed concurrently with the Motion ("Adams Decl."), ¶ 4. |
| 4. | Plaintiff was hired by Odle on November 5, 2012 as a clerk in the Center Standards & Initiatives department ("CSI Clerk"). | Declaration of Guillermo A. Escobedo, filed concurrently with the Motion, Exhibit 17 ("Pl. Depo."), 56:20-22, 58:1-16. |
| 5. | Plaintiff was paid $12 per hour, and was always an at-will employee. | Ex. 17, Pl. Depo. at 63:6-11. |
| 6. | Upon being hired, Plaintiff received a "Standards of Conduct" package, which includes guidelines as to what is "deemed acceptable or unacceptable conduct by any…employee," such as tardiness, absenteeism, breach of data integrity and insubordination. | Declaration of Dawn White, filed concurrently with the Motion ("White Decl."), ¶ 6, Ex. 2, "Standards of Conduct"; Ex. 17, Pl. Depo., 74:24-77:14. |
| 7. | Plaintiff also received the Policies In Brief, which included policies concerning vacation, sick leave, and personal appearance. | Ex. 17, Pl. Depo. at 77:18-78:11. |
| 8. | Odle also has in effect an Affirmative Action/Equal Employment Opportunity policy, which, in part, prohibits discrimination against its disabled employees.  Odle further has a policy requiring it to provide reasonable accommodation to its employees, which is posted in its facility. | White Decl., ¶ 6, Ex. 6, "Affirmative Action/Equal Employment Opportunity Policy." |
| 9. | As a CSI Clerk, Plaintiff was responsible for various clerical duties and for assisting her supervisor, CSI Manager Carl Adams, in enforcing behavior management systems. | White Decl., ¶ 5, Ex. 1, CSI Clerk Job Description; Ex. 17, Pl. Depo., 292:24-293:12. |
| 10. | As Plaintiff admits, the position was "*very demanding and very hands-on*," and required | Ex. 17, Pl. Depo. 58:17-21, 60:17-24. |

29

FINDING OF UNCONTROVERTED FACTS AND CONTENTIONS OF LAW

| | Defendant's Uncontroverted Material Facts | Defendant's Supporting Evidence |
|---|---|---|
| | a level of "*trust*" with the students. | |
| 11. | The position required Plaintiff to handle 40-50 Incident Reports (i.e., disciplinary reports) per week. | Ex. 17, Pl. Depo., 114:17-20. |
| 12. | Plaintiff only had a short timeframe – between two to seven days per Incident Report– in which to interview the disciplined student, coordinate with a fact-finding board, and process the paperwork. | Ex. 17, Pl. Depo. at 116:1-117:25. |
| 13. | If these deadlines were not timely met, Odle could encounter issues with its governmental audit and could lose funding. | Adams Decl., ¶ 5. |
| 14. | Plaintiff also served as the Student Government Advisor ("SGA"), in which she was responsible for meeting with the student government board twice a month, overseeing the student store and its funds, and assisting in organizing student events. | Ex. 17, Pl. Depo., 93:11-94:11. |
| 15. | This position also required ongoing diligence, as mishandling of funds could result in an unfavorable audit and defunding. | Ex. 17, Pl. Depo.,  at 126:19-22. |
| 16. | Plaintiff was reprimanded on more than one occasion for being tardy and not contacting her supervisor beforehand. | Ex. 17, Pl. Depo., 76:16-23, 176:19-177:25, 182:24-183:3, 204:16-21; Adams Decl., ¶¶ 13, 17, Ex. 10, "Documentation of incident," Ex. 14 "Documentation of incident." |
| 17. | Carl Adams found $30 from the Student Store in an envelope in Plaintiff's office, which Plaintiff admitted misplacing. | Adams Decl., ¶ 8, Ex. 7, "Email from Mr. Adams"; Ex. 17, Pl. Depo., 99:17-100:1, 123:19-124:13. |
| 18. | Plaintiff was reprimanded on March 25, 2013 for her attire.  Williams was sent home to change clothes and returned in pants that were considered by her supervisor to be inappropriate and in violation of the dress | Ex. 17, Pl. Depo., 167:7-24, 205:14-19. |

FINDING OF UNCONTROVERTED FACTS AND CONTENTIONS OF LAW

| | | Defendant's Uncontroverted Material Facts | Defendant's Supporting Evidence |
|---|---|---|---|
| | | code. Plaintiff asked to be sent home for the rest of the day. | |
| | 19. | Plaintiff was reprimanded on approximately April 5, 2013 for speaking inappropriately to the Student Government Association President (*i.e.*, raised voice, and harsh tone, and for telling him to "*grow up and stop acting like a child*"). | Adams Decl., ¶¶ 10-12, Ex. 9, "Documentation from Mr. Adams"; Ex. 17, Pl. Depo. 142:12-143:20. |
| | 20. | Plaintiff was counseled on May 23, 2013 in connection with several "data integrity issues," including misclassifying a student as having "AWOL" status, and not timely submitting paperwork following a student's separation. | Adams Decl., ¶ 14, "Documentation of incident"; Ex. 11, "Email from Mr. Adams"; Ex. 17, Pl. Depo., 77:8-11, 106:25-107:22, 183:22-184:22. |
| | 21. | On June 17, 2013, Plaintiff was issued a Corrective Action Plan ("CAP"), which served as her final warning. The CAP was based on Plaintiff ongoing tardiness, conflicts with coworkers, and failure to improve. | Adams Decl., ¶ 16, Ex. 13, "Corrective Action Plan"; Ex. 17, Pl. Depo., 200:5-201:17. |
| | 22. | On June 20, 2013, Plaintiff received her six-month review from her supervisor, Mr. Adams. Plaintiff was rated an overall rating of 54 out of 100 possible points, which qualified as "Needs Improvement." . | Adams Decl., ¶ 15, Ex. 12, "Performance Review"; Ex. 17, Pl. Depo. 159:4-160:9 |
| | 23. | On August 20, 2014, Plaintiff was issued a doctor's note from The Children's Clinic indicating that Plaintiff was unable to work until she was re-evaluated on September 3, 2013. Neither the note nor Plaintiff indicated Plaintiff's symptoms or medical condition. | Ex. 17, Pl. Depo. 232:4-25, 233:11-19. |
| | 24. | In response to the August 20th doctor's note, Odle informed Plaintiff that she was not eligible for a leave of absence under the Family and Medical Leave Act ("FMLA") because she had not worked the requisite number of hours or the year of employment. | White Decl., ¶ 8, Ex. 3, "FMLA Letter"; Ex. 17, Pl. Depo., 241:7-242:1. |

31

FINDING OF UNCONTROVERTED FACTS AND CONTENTIONS OF LAW

| | | Defendant's Uncontroverted Material Facts | Defendant's Supporting Evidence |
|---|---|---|---|
| | 25. | However, Odle nonetheless afforded Plaintiff an accommodation by allowing her the time off work, as set forth in the doctor's note. | White Decl., ¶ 8, Ex. 3, "FMLA Letter"; Ex. 17, Pl. Depo., 241:7-242:1. |
| | 26. | Plaintiff was issued another doctor's note on September 3, 2013, which extended her leave through October 2, 2013. | Ex. 17, Pl. Depo., 248:17-20; White Decl., ¶ 15. |
| | 27. | During Plaintiff's leave of absence, Plaintiff's job duties were completed in large part by Plaintiff's supervisor, Carl Adams. | Adams Decl., ¶ 19; White Decl., ¶ 10. |
| | 28. | At the time, Mr. Adams was simultaneously serving as the CSI Manager (his own position) and the interim CSI Clerk (Plaintiff's position), while also performing the duties of another employee who had recently left. | Adams Decl., ¶ 19; White Decl., ¶ 10. |
| | 29. | As a result, there were delays in the administration of student's disciplinary reports and hearings. | Adams Decl., ¶ 20; White Decl., ¶ 9. |
| | 30. | During Plaintiff's leave of absence, Odle's students threatened to contact the Department of Labor ("DOL") to complain about the delays. | White Decl., ¶ 9. |
| | 31. | These complaints, if acted upon by the DOL, could result in Odle being docked funding or removed from the Job Corps program. | White Decl., ¶ 9, Adams Decl., ¶ 20. |
| | 32. | If Odle received a poor evaluation from the DOL, it would be reflected on the Contractors' Past Adjectival Rating ("CPAR"), which could negative affect contract award and funding. | Odle Decl., ¶ 11. |
| | 33. | Odle was genuinely concerned about the extended vacancy of the CSI Clerk position, particularly in light of the recent complaints by students and the ongoing delays in completing the Incident Reports and other | White Decl., ¶ 11; Odle Decl., ¶ 12, Declaration of Elsa Schwenker, filed concurrently with the Motion ("Schwenker Decl."), ¶ 12. |

32

| | | Defendant's Uncontroverted Material Facts | Defendant's Supporting Evidence |
|---|---|---|---|
| | | tasks. | |
| | 34. | Accordingly, when Odle received Plaintiff's September 3rd doctor's note, Dawn White (HR Manager) informed Plaintiff that if she did not return to work by September 6, 2013, Odle would need to post her position. | White Decl., ¶ 15; Ex. 17, Pl. Depo. 250:14-21. |
| | 35. | Ms. White informed Plaintiff that her employment was not being terminated and that upon her return to work, she would be provided with options for other available positions. | White Decl., ¶ 15; Ex. 17, Pl. Depo. 250:14-21. |
| | 36. | On September 17, 2013, Ms. White informed Williams that Odle could not hold her position that that it was being posted because Odle needed someone to perform her duties immediately. | White Decl., ¶ 16. |
| | 37. | The CSI position was filled on September 25, 2013 by an existing coworker, who immediately started to assume the CSI clerk duties. | White Decl., ¶ 17, Ex. 5, "Offer Letter." |
| | 38. | Ms. White again informed Plaintiff that her employment was not being terminated. | Ex. 17, Pl. Depo., 262:12-23. |
| | 39. | On September 25, 2013, Ms. White contacted Plaintiff and offered her an on-call residential advisor position, which paid a dollar more per hour than the CSI Clerk position. | Ex. 17, Pl. Depo., 264: 1-25; White Decl., ¶ 18. |
| | 40. | The position would further offer Plaintiff a flexible schedule under which she could work as much or as little as she desired. | Ex. 17, Pl. Depo., 264: 1-25; White Decl., ¶ 18. |
| | 41. | The position would further allow Plaintiff to schedule her shifts to accommodate her scheduling needs outside of the office, including any medical appointments. | Ex. 17, Pl. Depo., 264: 1-25; White Decl., ¶ 18. |

| | | Defendant's Uncontroverted Material Facts | Defendant's Supporting Evidence |
|---|---|---|---|
| | | | |
| | 42. | The position was also in a new department, which afforded Plaintiff the opportunity to work under a different supervisor and avoid the stress that she had allegedly endured with Mr. Adams. | Ex. 17, Pl. Depo., 264: 1-25; White Decl., ¶ 18. |
| | 43. | Plaintiff testified that she rejected the offer because it did not have a set schedule; however, Plaintiff admitted in deposition that she never asked about whether she could work up to 40 hours per week, and/or tailor the schedule to her needs. | Ex. 17, Pl. Depo., 265:4-267:25. |
| | 44. | Plaintiff simply refused the offer. | Ex. 17, Pl. Depo., 265:4-267:25. |
| | 45. | As such, and because no other positions were immediately available, Plaintiff's employment was terminated on September 25, 2013. | White Decl., ¶ 19. |
| | 46. | Odle did not make the decision to terminate Plaintiff's employment based on Plaintiff's medical condition. | White Decl., ¶ 22; Adams Decl., ¶ 24; Schwenker Decl., ¶ 19-20; Odle Decl., ¶ 19. |
| | 47. | Furthermore, Odle has afforded other employees with accommodations, such as extended leaves of absence and modified work schedules, due to their respective medical conditions. | White Decl., ¶ 24. |
| | 48. | On September 25, 2013, Ms. White informed Plaintiff that she would have other positions coming available in the near future, including the position of Scheduling Clerk. | Ex. 17, Pl. Depo., 268:1-15; White Decl., ¶ 18. |
| | 49. | The job descriptions for the On-Call RA and Scheduling Clerk positions were even included in the packet with her termination paperwork. | White Decl., ¶ 19. |
| | 50. | However, Plaintiff never inquired about returning to employment at Odle in any | Ex. 17, Pl. Depo., 287:9-11. |

FINDING OF UNCONTROVERTED FACTS AND CONTENTIONS OF LAW

| | Defendant's Uncontroverted Material Facts | Defendant's Supporting Evidence |
|---|---|---|
| | capacity. | |
| 51. | On January 9, 2014, during a hearing before the Unemployment Insurance Appeals Board, Ms. White informed Plaintiff of at least one available position at Odle. | White Decl., ¶ 21; Ex. 17, Pl. Depo., 295:15-296:23. |
| 52. | Plaintiff informed Ms. White that she was not interested in the position and not interested in working for Odle. | White Decl., ¶ 21; Ex. 17, Pl. Depo., 295:15-296:23. |

Based on the foregoing Uncontroverted Facts, the Court now makes its,

## CONCLUSIONS OF LAW

1.    Under Federal Rule of Civil Procedure 56(c), summary judgment should be granted if "there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as matter of law."

2.    Judgment should be granted in favor of Odle as to Plaintiff's first cause of action for Disability Discrimination in Violation of FEHA because Plaintiff has no evidence of pretext to rebut Odle's legitimate, non-discriminatory, business reasons for terminating Plaintiff's employment. *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 358 (2000); *Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th 52, 69 (2000).

3.    Judgment should be granted in favor of Odle as to Plaintiff's first cause of action for Disability Discrimination in Violation of FEHA because Plaintiff cannot establish that her alleged disability was a substantial motivating factor in Odle's decision to terminate her employment. *Harris v. City of Santa Monica* 56 Cal.4th 203, 231-232 (2013).

4.    Judgment should be granted in favor of Odle as to Plaintiff's second cause of action for Disability Discrimination in Violation of Public Policy because Plaintiff has no evidence of pretext to rebut Odle's legitimate, non-discriminatory, business reasons for terminating Plaintiff's employment. *Guz v. Bechtel Nat'l, Inc.*,

1  24 Cal. 4th 317, 358 (2000); *Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th

2  52, 69 (2000).

3       5.    Judgment should be granted in favor of Odle as to Plaintiff's second

4  cause of action for Disability Discrimination in Violation of Public Policy because

5  Plaintiff cannot establish that her alleged disability was a substantial motivating

6  factor in Odle's decision to terminate her employment.  *Harris v. City of Santa*

7  *Monica* 56 Cal.4[th] 203, 231-232 (2013).

8       6.    Judgment should be granted in favor of Odle as to Plaintiff's third cause

9  of action for Failure to Accommodate in Violation of FEHA because Plaintiff was

10  afforded reasonable accommodations, which she refused.     *Furtado v. State*

11  *Personnel Bd.*, 212 Cal. App. 4th 729, 744 (2013).

12       7.    Judgment should be granted in favor of Odle as to Plaintiff's Fourth

13  Cause of Action for Failure to Prevent Discrimination from Occurring in Violation

14  of FEHA because Plaintiff's underlying discrimination claim lacks merit.  *Trujillo v.*

15  *North County Transit District, et al.*, 63 Cal. App. 4th 280, 289 (1998).

16       8.    Judgment should be granted in favor of Odle as to Plaintiff's prayer for

17  punitive damages as Plaintiff cannot demonstrate clear and convincing evidence of

18  fraud, oppression or malice.  Cal. Civ. Code § 3294.

19

20

21

22  Dated: August 21, 2015

23                                 The Honorable Manuel L. Real

24                                 District Court Judge

25

26

27

28

FINDING OF UNCONTROVERTED FACTS AND CONTENTIONS OF LAW